UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

TRUCK AND AUTO EXTRAS, LLC,  )
et al.,                      )
                             )
        Plaintiffs,          )          No. 5:19-CV-280-REW
                             )
v.                           )
                             )          OPINION & ORDER
MARTY K. ANDERSON, et al.,   )
                             )
        Defendants.          )

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This case and the pending dismissal motion arise out of a transaction between two vehicle accessory purveyors, Plaintiff George Clay and Defendant Marty Anderson, and their respective companies. The parties sharply disagree as to the events surrounding the subject transaction, and Plaintiffs plead several claims in the alternative against the various Defendant players. For the reasons discussed, all but two of the claims survive dismissal, at this stage, per the facts alleged. This litigation—unlike the now-defunct Truck & Auto—thus persists; discovery must ensue on the remaining claims.

## I.   Factual and Procedural Background[1]

Clay's company, Truck & Auto Extras, began operating in Lexington, Kentucky in 2014. DE #14 (Amended Compl.) ¶¶ 14–16. Plaintiffs sold truck and automotive accessories and parts both from its physical retail location and online using the "TRUCK ADDONS" mark ("the Mark"). *Id.* ¶¶ 16, 18–19. In November 2018, Clay began negotiating with Anderson about a potential sale

---

[1] As is standard Rule 12 fare, the Court summarizes the facts as alleged in the Amended Complaint, viewing them and reasonable attendant inferences in the light most favorable to non-movant Plaintiffs at the dismissal stage.

of the business. *Id.* ¶ 21. Anderson had experience selling diesel-truck-related apparel and services and, per Clay, hoped to break into the auto accessory arena; Plaintiffs allege that Anderson sought to absorb Clay's existing business venture, remarketing it under his "Big Ass" brand. *Id.* ¶ 22–25. Clay asserts that he proposed a $300,000 purchase price, which Anderson did not immediately accept. *Id.* ¶¶ 26–27. Nevertheless, the parties moved forward with transferring the Truck & Auto business; by mid-December 2018, Anderson began creating space in Truck & Auto's retail location for Central Forms (CF) and Central Forms Solutions (CFS) to operate. *Id.* ¶¶ 28–29.[2] Around the same time, Plaintiffs allege, Anderson personally advised Clay while the two were in the store together that Anderson would deliver "a check" to Clay to pay for the business and, thus, would "settle up" on December 31, 2018. *Id.* ¶ 30. Anderson moved additional business operations into the retail space during Truck & Auto's subsequent holiday closure. *Id.* ¶ 31.

Despite Anderson's failure to pay Clay as anticipated on December 31, Clay surrendered Truck & Auto to Anderson "as a going concern" on January 1, 2019. *Id.* ¶¶ 32–33. In addition to occupancy of the physical retail space, Anderson obtained Truck & Auto's tangible and intangible assets, vendor and customer information, and online platforms, among other things; after fully transitioning CF, CFS, and Anderson's additional company, Sled Pull Central,[3] into the space, Anderson assumed and continued operation of Truck & Auto's business. *Id.* ¶¶ 34–37. Clay

---

[2] Per Defendants, CF is merely a real estate holding company owning the property CFS (a custom printing business) formerly occupied before entering Truck & Auto's space. DE #22 at 2–3. Plaintiffs include no specific allegations distinguishing between CF's and CFS's roles in the at-issue events. At this stage, the Court accepts Plaintiffs' general allegations that both CF and CFS occupied the former Truck & Auto premises in some manner.

[3] Plaintiffs, ostensibly in a typographical error, reference "Big Sled" in ¶ 36. The Amended Complaint's caption denominates the entity "Sled Pull Central," consistent with Defendants' designation. Defendants contend that Sled Pull (a t-shirt vendor at truck and tractor events) never operated in the Truck & Auto space; still, the Court must accept Plaintiffs' factual representation that Sled Pull operated in that space to some extent.

interpreted such continued operation as confirmation of Anderson's persisting intent to purchase the business. *Id.* ¶ 37. Though Clay approached Anderson about finalizing the sale "on several occasions" in early January 2019, however, Anderson was never available to meet. *Id.* ¶ 38.

On January 8, 2019, Anderson formed Big Ass Diesel Truck & Auto Extras and soon after registered BIG ASS DIESEL as an apparel-related trademark. *Id.* ¶¶ 39–40. On February 5, Anderson also formed Big Ass Custom LLC and began generally rebranding Truck & Auto under the "Big Ass" name; Anderson updated Truck & Auto's online sales platform domain to reflect the branding change and advertised on the site that the business that was "[f]ormerly Truck and Auto Extras" had "a new name, new ownership, and a new outlook." *Id.* ¶¶ 41–44. The new ownership entity, Big Ass Custom, invited consumers to visit the "newly decorated retail showroom" located in Truck & Auto's former unit. *Id.* ¶ 44. Per Clay, Anderson also told various employees (formerly of Truck & Auto, now of Big Ass Custom) that he did not intend to pay Clay for the business. *Id.* ¶ 46. On approximately February 14, 2019, Clay (having just returned from a vacation), questioned Anderson about why certain funds had ceased being deposited in Truck & Auto's account; Anderson did not provide the answers Clay sought and, rather, Anderson's spouse contacted police and ordered Clay to leave the store's premises. *Id.* ¶ 47–48. That same day, Anderson submitted a lease addendum to the retail space's landlord, stating "that George Clay is no longer operating under Truck & Auto Extras. Marty Anderson is now the proprietor of the business which is operating under the name of 'Big Ass Customs' at the [same] address." *Id.* ¶ 49. Anderson then began paying employees with checks from Big Ass Custom, rather than Truck & Auto. *Id.* ¶ 50.

Plaintiffs allege that, thereafter, Anderson did several things to functionally dismantle Truck & Auto's operations (all without Clay's consent), including: terminating vendor and

supplier contracts, reinitiating contractual relationships in Big Ass Custom's name, disposing of

tangible assets, diverting revenue into Big Ass Custom's accounts, assuming control of computer

equipment and electronic data (including financial, customer, and other business information),

accessing and altering or destroying electronic communications stored on Truck & Auto's drives

and cloud-based servers, and intercepting email communications sent to Truck & Auto by third-

parties. *Id.* ¶¶ 51–57. Clay's attorney contacted Anderson's counsel, by letter, on March 15, 2019,

emphasizing the need to complete the purchase transaction. *Id.* ¶ 58. Anderson's lawyer responded

on March 22 (via email) with a draft purchase contract; from the email, Clay understood that

Anderson's attorney actually transmitted the draft contract to Anderson months earlier (in January

2019). *Id.* ¶¶ 59–61.[4] However, the contract's terms materially differed from Clay's understanding

---

[4] Plaintiffs attach to the Amended Complaint several emails, including a brief, non-substantive exchange on March 22 between Anderson and Clay's attorney, in which Anderson provided the draft purchase agreement (DE #14-4), as well as an April 12 email from Anderson's counsel to Clay's, discussing Anderson's ultimate purchase intentions (DE #14-5). [For clarity, the Court notes that the exhibits' titling reflects dates inconsistent with the emails' content; the Court defers to the dates noted in the emails themselves.] Defendants then attach to their dismissal motion additional March 22 emails, between the parties' counsel, that dovetail with Anderson's sending of the draft contract and discuss it briefly. DE #22-1. The dismissal briefing makes much ado about the DE #22-1 emails—whether they in fact complete the email excerpts attached to the Amended Complaint (DE #14-4), whether the Court can consider them at the dismissal stage, and what effect (if any) they have on Plaintiffs' allegations. It matters not whether the Court *could* consider the emails (Plaintiffs' attachments or Defendants'), and the Court need not decide the matter; the various email communications have absolutely no bearing on the result at this stage. First, Plaintiffs' attached emails simply substantiate allegations in the Complaint (*i.e.*, concerning the delay between when Anderson received the draft contract and when he provided it to Clay in March, and the fact that Anderson later declined to buy Truck & Auto in April). The Court would (and does) accept such well-pleaded factual assertions in the Amended Complaint sans the email proof. Indeed, even the actual draft purchase contract offers little assistance in resolving the motion to dismiss—Plaintiff fairly alleges that the parties' averred oral agreement in December 2018 consisted of terms that materially differed from those in the later draft contract, but, without testimony regarding the oral agreement's substance, the alleged discrepancy cannot be evidentiarily evaluated. Nor should it be, at this stage. Rather, the Court must accept the Complaint's factual allegation that the draft proposal differed from Clay's understanding of the parties' agreement. Second, the DE #22-1 emails (which contain the DE #14-4 exchange, minus the purchase agreement itself) lack the dispositive effect Defendants urge. Defendants argue that

of the pair's oral agreement, and Clay avers that Anderson had not mentioned any deviation from the planned terms in the intervening months, despite the ostensible January contract receipt. DE #14 ¶¶ 59–61.

The Anderson-Clay business relationship only devolved further from there. Plaintiffs characterize the draft contract as a mere stall tactic, alleging that Anderson never really planned to pay for Truck & Auto. *Id.* ¶ 62. In mid-April 2019,[5] Anderson ultimately advised Clay, through counsel, that he had "no interest in buying" the Truck & Auto business; the email described Truck & Auto's assets and inventory as "worthless" and the business as "abandoned." *Id.* ¶¶ 65–67. In late July or early August of 2019 (after Plaintiffs initiated this action), Anderson and his companies left the former Truck & Auto premises, moving to a different location. *Id.* ¶¶ 68–69. Per Plaintiffs, Anderson left the store in disarray, allowed employees (and/or third-parties) to take some of Truck & Auto's property, and failed to fully pay the final month's rent, resulting in a landlord's lien on what little remains. *Id.* ¶¶ 70–76. Plaintiffs further allege that Anderson is using Truck & Auto's

---

these emails prove that the parties were still negotiating the Truck & Auto purchase in March, thus refuting Plaintiffs' breach of contract allegations predicated on a prior oral agreement. The import of the DE #22-1 conversation is entirely unclear, though, and hotly disputed. At most, the exchange shows that Clay perceived the agreement as including a $300,000 purchase price (among other terms), and the contract drafted by Anderson's attorney, at Anderson's behest, materially differed from Clay's understanding of the parties' agreement. The Amended Complaint already alleges this much. The key (disputed) question—whether the terms differed because there was never any concrete agreement, and the parties were still negotiating all along (as Defendants say), or whether Anderson backtracked on the parties' prior oral contract and breached it either by intentionally changing terms in the written version, or by using the draft as a "stall tactic" to avoid ever following through with the parties' purchase agreement (as Plaintiffs allege)—remains unanswered. That inquiry turns on contested issues of intent and understanding that are neither developed via testimony on this record nor properly considered at this stage. All of the emails in the record could support either side's theory, depending on the surrounding proof, and the Court may not choose between such competing theories here. The Court must hew to the Complaint's well-pleaded factual terrain. The attached emails thus have no impact on the Court's dismissal decision.

[5] The Complaint references an April 14 communication. DE #14 ¶¶ 65, 67. The attached DE #14-5 email is dated April 12. The two-day discrepancy makes no difference here.

financial data and computer systems at its new location, as well as selling a portion of Truck & Auto's former inventory. *Id.*

Plaintiffs sued in July 2019. DE #1 (Complaint). Plaintiffs initially asserted claims for fraud, breach of fiduciary duty, conversion, trademark infringement, unfair competition, and breach of contract against Anderson and four of his companies. The Court permitted Plaintiffs' sought amendment and joinder in December 2019. DE #13. The Amended Complaint (DE #14) slightly altered and/or bolstered the factual bases for each of the previously pleaded causes of action and additionally asserted claims for violation of implied or constructive bailment, trespass to chattels, violation of the Stored Communications Act, and theft of trade secrets.[6] The Amended Complaint also added Big Ass Custom as a Defendant. Plaintiffs seek, per the Amended Complaint, compensatory and punitive damages, specific performance of the parties' purchase agreement, and an order enjoining Defendants' misappropriation of Plaintiffs' trade secrets and continued use of the Mark. Defendants move to dismiss each claim under Rule 12(b)(6). DE #22. Plaintiffs have opposed dismissal, *see* DE #27, and Defendants replied, *see* DE #28. The motion is ripe for review.

## II.    Rule 8 Standard

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1974 (2007)). "A

---

[6] The contract, fiduciary duty, fraud, and bailment claims are asserted against Anderson only. The remaining claims in the Amended Complaint are asserted against Anderson and "one or more of Defendant companies." The Court has some concerns about the Defendant-entity allegations, which in most respects are non-specific. However, recognizing the formation and control issues alleged in the Complaint, all tied to Anderson, the Court allows the matter to continue as to the entities and involved counts, for now, on the terms here discussed. The discovery and summary judgment stages will comb out the entities against whom no triable claim exists.

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, "a formulaic recitation of a cause of action's elements will not do[.]" *Twombly*, 127 S. Ct. at 1965. Courts "must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). Yet, courts need not accept "legal conclusion[s] couched as [] factual allegation[s]." *Papasan v. Allain*, 106 S. Ct. 2932, 2944 (1986). The Court evaluates and tests the well-pleaded Amended Complaint content. *Peterson v. Ostrander*, No. 17-2160, 2018 WL 4739692, at *2 (6th Cir. Apr. 6, 2018) ("[T]he court must confine its analysis to the pleadings and accept all well-pleaded allegations as true.").

Hinging on Rule 8's minimal standards, *Twombly* and *Iqbal* require a plaintiff to "plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014). Where plaintiffs state "simply, concisely, and directly events that . . . entitle[] them to damages," the rules require "no more to stave off threshold dismissal for want of an adequate statement[.]" *Id.*; *El-Hallani v. Huntington Nat. Bank*, 623 F. App'x 730, 739 (6th Cir. 2015) ("Although *Twombly* and *Iqbal* have raised the bar for pleading, it is still low.").

Generally, "matters outside of the pleadings are not to be considered" by a court in ruling on a motion to dismiss. *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989). But, "a document that is not formally incorporated by reference or attached to a complaint may still be considered part of the pleadings." *Greenberg v. Life Ins. Co.*, 177 F.3d 507, 514 (6th Cir. 1999). When a complaint refers to a document that is "central to the plaintiff's claim, . . . the defendant may submit an authentic copy to the court to be considered on a motion to dismiss, and the court's consideration of the document does not require conversion of the motion to one for summary judgment.'" *Id.* The Court may also consider public records or materials that "are otherwise

appropriate for the taking of judicial notice." *Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 467 (6th Cir. 2011) (internal quotation marks and citation omitted). As discussed, the parties disagree as to whether the Court can consider the emails attached to the dismissal motion, but the Court need not resolve that dispute; the contested communications either mirror the Amended Complaint's allegations,[7] or bear inconclusively on disputed factual questions not properly resolved at this juncture. The Amended Complaint's factual allegations are neither contradicted, altered, or necessarily supplemented by any of the proffered exhibits for purposes of the dismissal analysis. The Amended Complaint itself withstands (in large part) the 12(b)(6) challenge.

### III.   Analysis

Defendants challenge the full Amended Complaint. The Court considers each claim in turn.

### 1.   Breach of Contract (Count One)[8]

Defendants' sole argument for dismissal of the contract claim is factual and premised on the DE #22-1 emails. For the reasons already noted, *see infra* n.4, the Court rejects the argument. A successful breach of contract claim in Kentucky "require[es] proof of the existence of a contract, of a breach of that contract, and that the breach caused damages." *EQT Prod. Co. v. Big Sandy Co., L.P.*, 590 S.W.3d 275, 293 (Ky. Ct. App. 2019). Defendants foundationally challenge the existence of any contract between Clay and Anderson for the purchase of Truck & Auto. The emails, they argue, prove as much because Clay's counsel (after receiving the draft purchase

---

[7] The remaining exhibits attached to the Amended Complaint likewise relate to (and in some instances substantiate) the factual allegations, but they do not meaningfully aid in discerning whether those allegations plausibly demonstrate entitlement to the relief sought.

[8] Jurisdiction in this case hinges on the various federal claims. The Court exercises supplemental jurisdiction over the related state law claims; as such, it applies Kentucky law to their analyses. *See Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 741 (6th Cir. 1999) ("A federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction."). The parties do not contest Kentucky law application.

contract that differed from Clay's expectations) stated that "it looks like the initial item for negotiation is the purchase price." DE #22-1 at 1. Clay's counsel further represented his "understanding [ ] that George proposed $300K at some point to Marty, but Marty never gave a clear response." *Id.* Clay's counsel thus presumed the draft contract "Marty's counter-proposal[,]" and, though he characterized it as "not anywhere close to being in the ballpark," expressed optimism that the parties could "negotiate a fair price for the business." *Id.* Per Defendants, these statements render implausible Plaintiffs' allegations that the parties orally agreed upon a $300,000 sale price, and Anderson—despite promising to "deliver a check" and "settle up" after Clay satisfied his end of the bargain and surrendered Truck & Auto—breached the agreement by failing to do so.

Plaintiffs' contract theory is, essentially, that (1) Clay proposed a $300,000 price to Anderson, (2) Anderson, though providing no verbal response, clearly accepted Truck & Auto per that offered term when he promised a "check" and assumed control of the business and continued operating it, as the parties' alleged agreement contemplated, and (3) Anderson then breached that agreement by failing to pay Clay the agreed-upon amount (or, indeed, anything), depriving Clay of Truck & Auto without compensation. Those facts, if true, plausibly allege the requisite breach of contract elements. Critically, the DE #22-1 email content does not unequivocally render the Amended Complaint's breach of contract claim implausible. Clay's counsel noted Clay's expectation of a $300,000 purchase price in the email. One could rationally interpret the subsequent reference to negotiation as pragmatic recognition, *by Clay's counsel*, that Anderson intended to breach (or had breached) the prior oral agreement and, as such, willingness to renegotiate a price that would satisfy both sides. Such an interpretation would be consistent with Plaintiffs' breach theory. Moreover, Clay's counsel's representations—even if probative down the

9

road—are not dispositive, at the dismissal stage, of the contract claim, which ultimately hinges on Clay's and Anderson's prior shared understanding. Such facts, surely available in discovery, are not now before the Court (nor should they be). It suffices to say that the DE #22-1 email does not clearly contradict the Amended Complaint's contract-related allegations, so as to render the claim factually implausible. And, positioning the averred facts within the apt legal framework, there is sufficient content in the Amended Complaint to survive dismissal on this count.

Before turning to the remaining claims, the Court addresses a raised topic related to the contract issue: Plaintiffs' alternative pleading strategy. Defendants contend that Plaintiffs have— either as to the breach of contract claim, or as to the remaining claims—"plead[ed] [themselves] out of court," *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 458 (6th Cir. 2007), because the allegations underlying the contract claim necessarily contradict those underpinning the other causes of action. Both parties acknowledge that Rule 8 allows alternative (even inconsistent) pleading. *See* Fed. R. Civ. P. 8(d) (permitting "2 or more statements of a claim . . . alternatively or hypothetically" and providing that "[a] party may state as many separate claims . . . as it has, regardless of consistency"). Defendants' challenge rests primarily on Rule 11; they argue that Plaintiffs do not legitimately doubt whether a contract existed—that, rather, Plaintiffs knew the parties were in fact still negotiating and had never agreed upon anything concrete—and, thus, the pleading violates Rule 11's requirement that it be grounded in fact to the best of Plaintiffs' knowledge. *See* Fed. R. Civ. P. 11 (requiring all pleaded facts to be "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances"); *see also Great Lakes Higher Educ. Corp. v. Austin Bank of Chicago*, 837 F. Supp. 892, 894 (N.D. Ill. 1993) (observing that, to comply with Rule 11, "a pleader may only assert contradictory statements of fact when the pleader legitimately is in doubt about the fact in question"); *Mrla v. Fed. Nat'l Mortg. Ass'n*, No.

15-CV-13370, 2016 WL 3924112, at *4 (E.D. Mich. July 21, 2016) ("[C]ourts have held that Rule 8(d)(3)'s 'alternative pleadings rule' does not cover inconsistent assertions of fact when the pleader holds the knowledge of which of the inconsistent facts is the true one.").

However, as Plaintiffs note, alternative pleading may be particularly useful "in circumstances in which proving the plaintiff's alternative claims may require 'complex inquiries into the parties' intent.'" *Indep. Enterprises Inc. v. Pittsburgh Water & Sewer Auth.*, 103 F.3d 1165, 1175 (3d Cir. 1997) (quoting *Henry v. Daytop Village*, 42 F.3d 89, 95 (2d Cir. 1994)). Such is the case here. Fairly read, the Amended Complaint alleges either (1) that Clay and Anderson had a mutual understanding that Clay wished to sell Truck & Auto for $300,000, and Anderson functionally accepted Clay's offer via his conduct and intended to pay Clay the agreed amount at some later date (before breaching that agreement), or (2) that Anderson never intended to pay Clay that amount (or anything) for Truck & Auto, and thus took possession of the store not pursuant to the parties' oral agreement, but to deceitfully absorb and dismantle the business without compensating Clay for it. Count One operates under the first theory; Counts Two through Ten operate under the second. Which theory proves true depends on Anderson's understanding and intent and, presumably, discovery will reveal which theory is ultimately viable. As Plaintiffs note, per the Amended Complaint, they "expressly plead [Counts Two through Ten] in the alternative to Count One." DE #27 at 10. To do so is permitted and, under these circumstances, reasonable. The legal hurdles between an agreement and an enforceable agreement also validate the procedural approach. The Court declines to dismiss any count based on argued pleading inconsistency.

## 2. **Breach of Fiduciary Duty (Count Two)**[9]

This claim fails as a legal matter.[10] The facts alleged do not plausibly give rise to the existence of a fiduciary relationship between Anderson and Clay. A fiduciary relationship "exists in all cases where there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Steelvest, Inc. v. Scansteel Serv. Ctr.*, Inc., 807 S.W.2d 476, 485 (Ky. 1991) (citation omitted). "[A]s a general rule," a fiduciary relationship "necessarily involves an undertaking in which a duty is created in one person to act primarily for another's benefit in matters connected with such undertaking." *Id.* A fiduciary duty claimant is "required to show: 1) the existence of a fiduciary duty; 2) a breach of that duty; 3) and that the breach caused injury to the party to whom the duty was owed." *Seeger Enterprises, Inc. v. Town & Country Bank & Tr. Co.*, 518 S.W.3d 791, 795 (Ky. Ct. App. 2017) (citing *Baptist Physicians Lexington, Inc. v. New Lexington Clinic, P.S.C.*, 436 S.W.3d 189 (Ky. 2013)). Critically, "[s]uch a duty 'requires more than the generalized business obligation of good faith and fair dealing.'" *Id.* (quoting *Ballard v. 1400 Willow Council of Co-Owners, Inc.*, 430 S.W.3d 229, 242 (Ky. 2013)).

---

[9] Defendants make a relatively brief, general standing argument as to Counts Two through Ten (the non-contract claims) that essentially tracks their challenge to the Amended Complaint's alternative pleading. They argue that "Plaintiffs lack standing because they plead that they no longer have a property interest in the assets of Truck & Auto, having surrendered the business and its assets to Anderson." DE #22 at 8. This characterization over-generalizes Plaintiffs' alternative theories. As noted, Plaintiffs allege either that Clay surrendered Truck & Auto pursuant to a binding oral agreement that Anderson subsequently breached, or that Anderson deceitfully allowed Clay to transfer the business, in reliance on an anticipated agreement, without any intention of compensating Clay as expected. The latter version of events (plausible, at least, per the alleged facts) undergirds and explains the Counts Two through Ten claims. Accepting those facts as true, there is no standing issue.

[10] The claim is twofold—Plaintiffs seek both damages for breach and demand an accounting. Neither claim variant succeeds, though, as the threshold duty does not exist in this scenario.

Specifically, and as this relief is sought alternatively to Plaintiffs' contract claim, Plaintiffs argue that the Amended Complaint demonstrates that they "placed a wide array of confidential information and other valuable property in the hands of [Anderson] to hold as a part of a planned transaction that the parties had not yet completed." DE #27 at 14. The obligation Plaintiffs describe—either to complete the transaction as the parties contemplated, or to return the business in substantially the same condition, if Anderson failed to follow through with the purchase—is simply one of good faith and fair dealing. "An ordinary business relationship or an agreement reached through arm's length transactions 'cannot be turned into a fiduciary one absent factors of mutual knowledge of confidentiality or the undue exercise of power or influence.'" *Quadrille Bus. Sys. v. Kentucky Cattlemen's Ass'n, Inc.*, 242 S.W.3d 359, 365 (Ky. Ct. App. 2007) (quoting *Anchor v. O'Toole*, 94 F.3d 1014, 1024 (6th Cir. 1996)). Although Plaintiffs argue that such a confidential relationship existed, the alleged facts simply describe an incomplete, arm's length business transaction. *See* DE #14 ¶ 88 ("Clay reasonably trusted and relied on the integrity and fidelity of Anderson and his businesses to act primarily in Clay's and Truck & Auto's benefit pending Anderson's acquisition of Truck & Auto and while Anderson conducted Truck & Auto's business operations[.]"). The Amended Complaint, fairly read, describes a duty only to follow through with the contemplated transaction in good faith, or alternatively to return possession of the business information and assets to Clay. Any provision of proprietary or confidential information was simply attendant to the business transfer, pursuant to an anticipated purchase agreement, and created no special relationship distinct from the in-progress transaction.

"To make out a claim that a fiduciary relationship existed, the party claiming the fiduciary relationship must first show the relationship existed before the transaction that is the subject of the action." *Holmes v. Couch*, No. 2007-CA-000445-MR, 2008 WL 2468764, at *7 (Ky. Ct. App.

June 20, 2008). "The fact that one businessman trusts another, and relies upon his promise to perform a contract, does not rise to a confidential relationship." *Id.* (citation omitted). The Amended Complaint does not plausibly allege that any preexisting or independent confidential relationship existed between Anderson and Clay / Truck & Auto. Nor do the alleged facts support Plaintiffs' contention that Anderson was obligated to act primarily in Clay's or Truck & Auto's benefit in operating the business pending purchase completion.[11] Rather, Plaintiffs describe an ordinary good-faith and fair dealing duty, without alleging sufficient additional facts to render a fiduciary relationship plausible under the circumstances. The Court thus dismisses the fiduciary-duty-premised Count Two.

### 3.   Fraud (Count Three)

Plaintiffs' fraud allegations (encompassing fraud by misrepresentation, fraud by omission, and constructive fraud) must clear a higher pleading bar to survive dismissal. "Under the special pleading rules contained in Rule 9(b), a complaint alleges sufficient facts to survive a motion to dismiss when the plaintiff states 'with particularity the circumstances constituting fraud or mistake.'" *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 502–03 (6th Cir. 2008) (quoting Fed. R. Civ. P. 9(b)). Though Rule 9 "adds additional pleading requirements for allegations of fraud or mistake, [ ] it should not be read to defeat the general policy of simplicity and flexibility in pleadings contemplated by the Federal Rules." *Id.* at 503 (internal quotation marks and citation omitted). The Sixth Circuit has consistently hewed to its "long-standing holding that, under Rule 9(b), a plaintiff must 'allege the time, place, and content of the alleged misrepresentation . . . the fraudulent scheme; the fraudulent intent of the defendants; and the injury

---

[11] The Court need not accept the Amended Complaint's non-factual, formulaic assertion to the contrary in ¶ 88.

resulting from the fraud.'" *Id.* at 504 (quoting *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 504 (6th Cir. 2007)). The Court still must remain mindful of Rule 9's "overarching purpose": "[T]o ensure that a defendant possesses sufficient information to respond to an allegation of fraud[.]" *Id.*

Plaintiffs' general fraud theory is that Clay proposed a sale of Truck & Auto to Anderson; Anderson, without a verbal answer, acted in a manner indicating his intent to purchase Truck & Auto; Clay transferred operation of the business to Anderson in reliance on the purchase expectation confirmed by Anderson's words and conduct; and Anderson—who never in fact intended to pay Clay for the business—refused to complete the transaction post-transfer. Plaintiffs allege that Anderson's absorption (and ultimate ruin) of Truck & Auto, absent compensation, constitute the requisite injury. A Kentucky fraud by misrepresentation claim requires proof

> of the following six elements: (1) that the declarant made a material representation to the plaintiff, (2) that this representation was false, (3) that the declarant knew the representation was false or made it recklessly, (4) that the declarant induced the plaintiff to act upon the misrepresentation, (5) that the plaintiff relied upon the misrepresentation, and (6) that the misrepresentation caused injury to the plaintiff.

*Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky. 2009). Defendants challenge the first element, arguing that Anderson made no actionable misrepresentation to Clay; they characterize Anderson's alleged promise to buy Truck & Auto as a mere statement of future intent, insufficient to support a fraud claim. *See, e.g.*, *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1447 (6th Cir. 1993) ("Under Kentucky law, representations as to future conduct will not support a fraud claim."). However, if representations of future intent "are positively stated in order to induce another to do something and the party making the representations has no intention of performance, such statements may be misrepresentation of facts on which fraud may be predicated." *Schroerlucke v. Hall*, 249 S.W.2d 130, 131 (Ky. 1952); *accord Moore*, 992 F.2d at 1447–48.

15

Per Plaintiffs, Anderson affirmatively represented to Clay in December of 2018 (in person, at the store) that he intended to purchase (yield a "check" and "settle up" for) Truck & Auto, consistent with Clay's extant offer to sell the business. Such a representation positively conveys, at minimum, Anderson's intent to compensate Clay in some manner and to some extent for receipt of Truck & Auto.[12] Plaintiffs plausibly plead that Anderson made this statement to induce them to transfer control of the business to Anderson and that they relied upon it in doing so. The facts further plausibly support Plaintiffs' theory that Anderson never intended to pay Clay (statements to employees, even having his lawyer draft a proposal inconsistent with Clay's expectations, which, to make matters worse, Anderson sat on without action for two months), ultimately depriving Clay of Truck & Auto in its December 2018 state without compensation. Viewing the alleged facts and reasonable accompanying inferences in the light most favorable to Clay and Truck & Auto, the Amended Complaint adequately alleges fraudulent misrepresentation for Rule 9(b) purposes.

"To prevail on a claim of fraud by omission . . ., a plaintiff must" allege, at this stage, "a) that the defendants had a duty to disclose that fact; b) that defendants failed to disclose that fact; c) that the defendants' failure to disclose the material fact induced the plaintiff to act; and (d) that the plaintiff suffered actual damages." *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636, 641 (Ky. Ct. App. 2003). "A duty to disclose facts is created only where a confidential or fiduciary relationship between the parties exists, or when a statute imposes such a duty, or when a defendant has partially disclosed material facts to the plaintiff but created the impression of full

---

[12] Defendants argue that the full March 22 email chain disproves any such purchase intent, as the parties were still negotiating a price in March 2019. As noted, the lawyer emails do not render implausible Plaintiffs' contention that Clay and Anderson formed an agreement between themselves in late 2018, confirmed by Anderson's conduct.

disclosure." *Id.* Plaintiffs allege no statute-based duty, and the Court has rejected the claimed fiduciary duty in this context. The avenue to fraud by omission, then, rests on Anderson's alleged partial disclosure of material facts; Plaintiffs aver that, "[h]aving taken control of Truck & Auto's business operations and assets under the pretense of a planned acquisition (which was a partial disclosure of material facts creating the impression of full disclosure)," Anderson had a duty to honestly inform Clay that he did not intend to pay money for the business. DE #14 ¶ 97.

Plaintiffs fail to plead this sub-theory with the particularity required. It is unclear, from the Amended Complaint, just what "partial disclosure" Plaintiffs cite. Plaintiffs contend that the partial disclosure was Anderson's acceptance of Truck & Auto under the allegedly false pretense of a planned transaction. Construing the allegations liberally, it seems that Plaintiffs fault Anderson for voicing willingness to participate in the transaction but failing to mention that he did not intend to pay money for the business.[13] Such a theory is logically nonsensical, once parsed; the crux of the transaction here *was* expected payment by Anderson to Clay for the business. Without any other terms of the pending acquisition specified, it is impossible to separate the anticipated payment from the transaction. For all intents and purposes, Anderson's payment to Clay in exchange for Clay's transfer of Truck & Auto *was* the transaction. The alleged facts are thus an ill fit for a fraud by omission model. In any event, the Amended Complaint leaves too much uncertainty concerning the nature of the alleged disclosure to satisfy Rule 9(b).

---

[13] If the partial disclosure Plaintiffs reference were somehow made through Anderson's conduct in accepting Clay's transfer of the business, it is unclear what such conduct could have "induced" Plaintiffs to do. At that point, Plaintiffs had already transferred the business. The Amended Complaint does not allege that Plaintiffs subsequently attempted to rescind the transfer and retrieve the full business from Anderson as a going concern. Similarly, if the non- or partial disclosure arose from Defendants' post-transfer efforts to divert revenue and/or terminate contracts (*see* DE #14 ¶¶ 99–100), the Amended Complaint does not properly allege anything that such acts induced Plaintiffs to do. They had, as noted, already given Anderson control of the business.

The constructive fraud theory also fails for lack of a plausibly pleaded duty. A constructive fraud claim necessarily entails "a breach of a legal [or] equitable duty, where the parties' conduct tends to deceive others," regardless of whether the breaching party intended to defraud the plaintiff. *Harris v. Harris*, No. 2017-CA-000032-MR, 2019 WL 2563402, at *7 (Ky. Ct. App. June 21, 2019) (citing *Combs v. Poulos*, 241 Ky. 617, 44 S.W.2d 571 (Ky. Ct. App. 1931)). Per the Amended Complaint, Plaintiffs premise the claim on either a purported fiduciary duty or some partial disclosure, as above. Notably, in response to Defendants' motion (which contends that the claim fails, at least in part, due to the absence of a cognizable fiduciary obligation), Plaintiffs neglect to address the specifics surrounding this sub-claim. As with the fraud by omission claim, Plaintiffs fail to particularly allege the circumstances either giving rise to a disclosure duty or constituting the constructively fraudulent acts. It is not the Court's job to flesh out the theory, especially where Rule 9(b) requires Plaintiffs to come forth with heightened detail.

Ultimately, Plaintiffs offer a passing nod to the constructive and omission claims, but legitimately and particularly pursue only the actual fraud claim. That one, as discussed, survives. The Court, applying the Rule 9(b) standards, thus grants the dismissal request as to the alternative fraud theories, letting the most fitting variation proceed in discovery.

### 4. Bailment (Count Four)

In a claim related but alternative to Count One, Plaintiffs contend that, if the parties' late 2018 oral purchase agreement lacked the concrete terms necessary to constitute a binding contract, at minimum, an implied-in-fact or implied-in-law (constructive) bailment arose once Clay transferred the business to Anderson.

> A bailment consists of "the delivery of personal property by one person to another in trust for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed, and the property returned or duly accounted for when the special purpose is accomplished, or kept until the bailor reclaims it."

*Texas Capital Bank, N.A. v. First Am. Title Ins. Co.*, 822 F. Supp. 2d 678, 683 (W.D. Ky. 2011) (quoting *Jones v. Hanna*, 814 S.W.2d 287, 289 (Ky. Ct. App. 1991) (citation omitted)). "An implied-in-fact bailment arises when there is some form of understanding between the parties and the acts or conduct of the party sought to be bound provides a substantive foundation for the implied bailment contract." *Id.* (internal quotation marks and citation omitted). A constructive bailment, on the other hand, "may arise when one person has lawfully acquired possession of another's personal property . . . and holds it under such circumstances that the law imposes on the recipient of the property the obligation to keep it safely and redeliver it to the owner." *Id.* (internal quotation marks and citation omitted).

In the case of an implied-in-fact bailment, "delivery and acceptance must be present." *Adika v. Smith*, 466 F.3d 503, 507 (6th Cir. 2006) (citation omitted). There further must be "some form of understanding between the parties" to suggest an implied contractual relationship. *Id.* Plaintiffs fairly allege that the parties had an understanding that Anderson was to, eventually, pay Clay some amount for Truck & Auto, that Clay surrendered Truck & Auto on that basis, and that Anderson accepted it under contractual pretenses, but never completed the transaction and ultimately kept (and destroyed) the surrendered business. As with their response to several other claims, Defendants claim that the March 22 emails and draft contract negate allegations of any purchase understanding that existed between the parties before Clay transferred Truck & Auto. However, even if the precise price were still up for debate, as Defendants contend the exhibits establish, Plaintiffs plausibly allege at least some minimal understanding that Anderson would buy—at whatever agreed price—the business from Clay.[14] The Amended Complaint thus provides

---

[14] Though Defendants further argue that it would be "far more plausible" to conclude that Clay abandoned the business, as it was worthless and losing money monthly according to them, the

enough factual detail to avoid dismissal of the bailment claim.[15] A jilted seller that has surrendered physical assets in contemplation of a deal should not be without remedy to recover the assets after the deal dies.

### 5.  Conversion and Trespass to Chattels (Count Five)

A claim for conversion requires proof of six elements:

> (1) the plaintiff had legal title to the converted property; (2) the plaintiff had possession of the property or the right to possess it at the time of the conversion; (3) the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment; (4) the defendant intended to interfere with the plaintiff's possession; (5) the plaintiff made some demand for the property's return which the defendant refused; (6) the defendant's act was the legal cause of the plaintiff's loss of the property; and (7) the plaintiff suffered damage by the loss of the property.

*Kentucky Ass'n of Ctys. All Lines Fund Tr. v. McClendon*, 157 S.W.3d 626, 632 (Ky. 2005) (citation omitted). A claim for trespass to chattels is similar. "The main distinction between conversion . . . and trespass on personal property or trespass to chattel is the extent of the defendant's intermeddling with the property of the plaintiff, and the seriousness of the deprivation and damage caused." *Weatherly v. Hospice of Lake Cumberland, Inc.*, No. 2018-CA-000248-MR, 2019 WL 1422848, at *2 (Ky. Ct. App. Mar. 29, 2019) (internal quotation marks and citation omitted). In other words, conversion entails a serious or total deprivation of the owner's use and enjoyment of the subject property, while trespass to chattels involves generally only minor damage or deprivation. *Id.*; *see also Madison Capital Co., LLC v. S & S Salvage, LLC*, 794 F. Supp. 2d

---

Court cannot properly accept Defendants' conflicting allegations and alternate theory at this stage. Accepting Plaintiffs' factual representations and related inferences as true, there is enough in the Amended Complaint to render an implied bailment violation plausible.

[15] Having found that at least one route to the claim is plausible, the Court need not also decide whether a constructive bailment theory could potentially succeed. The claim as a whole survives, for now.

735, 740 (W.D. Ky. 2011), *aff'd*, 507 F. App'x 528 (6th Cir. 2012) (noting "that when a plaintiff alleges a claim for conversion, the alleged conduct will almost certainly have constituted a trespass," and the torts "are closely related to one another with the difference being the severity of the damage resulting from the tortious conduct").

Plaintiffs plead these torts as applying to Defendants' usurpation of the entire operational Truck & Auto business. *See generally* DE #27 at 16–17 (characterizing Anderson's offer to retrieve certain property as "a patently empty one" because "the offer encompassed far less than the fully operational business that Anderson received on January 1").[16] Per the Amended Complaint, the "operational business" included several physical assets at the time Clay surrendered it to Anderson. As to some assets, such as Truck & Auto's computer / server equipment and software programs, various inventory, and certain personal property items, Plaintiffs allege total absorption—including Anderson's transfer of the items and continued use or sale of them at his new store location. *See* DE #14 ¶ 71 (alleging that Defendants "left with much of the computer equipment, inventory, and other personal property belonging to Truck & Auto"); *id.* ¶ 73 ("Among the computer equipment taken were several point-of-sale computers and certain Dell servers, including [EBMS, an integrated digital business management tool]"); *id.* ¶ 74 (alleging that

---

[16] Count Five does not explicitly clarify whether the "assets" Plaintiffs deem converted (and/or trespassed to) include intangible property, or only encompass physical items. *See* DE #14 ¶¶ 114–121. Whether conversion and trespass may apply to intangibles is unsettled. Though "Kentucky courts have not addressed whether conversion applies to intangible property . . . [m]ost states [ ] have rejected or at least qualified intangible conversion, as do most states in the Sixth Circuit." *J & J Sports Prods., Inc. v. Jaschkowitz*, No. 5:14-CV-440, 2016 WL 2727015, at *13 (E.D. Ky. May 6, 2016) (collecting and discussing cases). The Court need not join the fray, at this point; the Amended Complaint fairly alleges conversion of and/or trespass upon several physical property items, permitting this claim to go forward at the dismissal stage, regardless. Plaintiffs may hone their theory and more specifically identify the precise assets (tangible or intangible) these claims target as discovery progresses, and summary judgment can ferret out any legally or factually unsustainable claims.

Defendants are currently using Plaintiffs' licensed copy of EBMS at their new location); *id.* ¶ 75 (alleging that Defendants are using Plaintiffs' computer equipment and selling Truck & Auto inventory at their new location). Such allegations support a conversion theory. Other allegations, collectively, allege trespass—*i.e.*, a scenario where Defendants only minorly (or at least less than fully) deprived Plaintiffs of their assets. *See, e.g.*, *id.* ¶ 71 (alleging that Defendants left some inventory and office equipment in the former Truck & Auto store upon desertion); *id.* ¶ 76 (alleging that Defendants damaged [but did not destroy] the shuttered Truck & Auto rental space). In response, Defendants primarily argue that (1) Plaintiffs never demanded return of the assets (and, thus, they cannot satisfy the fifth element of the torts), and (2) that because Defendants gained control of the business with Clay's permission, Defendants necessarily could not have converted (or trespassed to) the assets.

First, the Amended Complaint pleads that Clay sought to regain control of Truck & Auto (including all of its assets, as they existed at the time of surrender) at some point after its transfer, but Anderson refused to return the business in full. DE #14 ¶ 119. Expectedly, Defendants assert that the March 22 offer (*see* DE #22-1) from Anderson's counsel, to allow Clay to retrieve certain items after store hours, refutes any allegation that Defendants refused to return Truck & Auto's property. But, the Amended Complaint's conversion-related allegations identify numerous assets, many that it alleges Defendants continued to use post-location-switch. Even if the email offer to retrieve *some* property is properly considered (and true), it does not address, much less negate, Plaintiffs' claim that Anderson and his companies pilfered nearly every physical asset of value Truck & Auto had at the time of surrender. The Amended Complaint's allegations in this regard are specific, detailed, and broadly cover substantial property categories; the Court must accept them as true, and, doing so, finds the conversion (and the lesser trespass) claims properly alleged—

22

notwithstanding the challenged emails. In short, Plaintiffs plausibly aver that they surrendered the full Truck & Auto business, along with *all* of the tangible assets it owned as of January 1, 2019, eventually demanded return of the business and its property in the precise January 1 condition, and Defendants refused to oblige. Nothing in the record conclusively undermines these assertions. Such factual allegations, presumed true for instant purposes, are adequate to state claims for conversion and trespass.

Turning to Defendants' second argument, though Plaintiffs initially surrendered Truck & Auto to Anderson willingly, it does not follow that Anderson (and his companies) could not have later converted it. Plaintiffs aver that they transferred the business to Anderson explicitly as part of a planned sale and, to the extent such sale did not occur, intended that Anderson return the business and its assets in substantially the same condition. The Amended Complaint claims that Anderson exceeded his authority to possess and control Truck & Auto property; at this point, the pleading plausibly alleges, Anderson was wrongfully depriving Plaintiffs of their right to secure again the assets, constituting conversion. *Cf. Prop Enterprises, Inc. v. Sec. Ins. Co. of Hartford*, 782 F.2d 1043 (6th Cir. 1985) (discussing the Restatement (2d) of Torts in the context of analyzing Michigan law and observing that "[o]ne who is authorized to make a particular use of a chattel, and uses it in a manner exceeding the authorization, is subject to liability for conversion to another whose right to control the use of the chattel is thereby seriously violated"). Defendants do not offer authority (Kentucky or otherwise) for the proposition that an initially rightful acceptance of property precludes any later conversion, even where the possession outlasts the owner's permission to possess and use it. Reason compels a contrary conclusion. The Amended Complaint's facts demonstrate a plausible conversion theory, per the requisite Kentucky elements, and the Court rejects the dismissal effort as to this claim.

**6.  Stored Communications Act (SCA) Violations (Count Six)**

The SCA establishes statutory liability for any person that "intentionally accesses without authorization a facility through which an electronic communication service is provided" or "intentionally exceeds an authorization to access that facility[,]" "thereby obtain[ing] . . . access to a wire or electronic communication while it is in electronic storage[.]" 18 U.S.C. § 2701(a). Per § 2707(a), a private right of action is available for knowing or intentional violations of the SCA. *See also Everage v. Cent. Broad. Sys. Corp., Inc.*, No. CV 7:18-102-KKC, 2019 WL 1063367, at *3 (E.D. Ky. Mar. 6, 2019). An SCA claim "for unauthorized access of an e-mail account" requires proof that the

> (1) defendant intentionally accessed a facility through which an electronic communications service is provided; (2) such access was not authorized or intentionally exceeded any authorization by the person or entity providing the electronic communications service, the user of that service with respect to a communication of or intended for that user, or a federal statute; (3) defendant thereby obtained, altered, or prevented authorized access to an electronic communication while it was in electronic storage in such system; and (4) the defendant's unauthorized access or access in excess of authorization caused actual harm to the plaintiff.

*Id.*

Plaintiffs allege that Defendants intentionally accessed Truck & Auto's email accounts and messages outside of the scope of any authority to do so. Defendants' (brief) argument in response to this claim is twofold. First, they contend that Plaintiffs' allegation that they did not authorize Defendants to access Truck & Auto's email accounts, *see* DE #14 ¶ 130, "is irreconcilable" with the allegation that Plaintiffs surrendered full control of the business to Anderson. DE #22 at 20. Construing the allegations collectively and fairly, though, Plaintiffs describe a scenario where Defendants accessed the communications in a manner exceeding or inconsistent with the limited authority conferred by Clay. Plaintiffs allege that they transferred control of the business only

insofar as it remained part of a planned sale; thus, to the extent Anderson did not intend to participate in the contemplated transaction, or did not conclude the sale, the access authority ceased, per Plaintiffs. Such facts would reasonably demonstrate access intentionally exceeding Defendants' access authorization, in violation of § 2701(a).

Second, Defendants argue that Plaintiffs lack standing to bring the asserted SCA claim, specifically, as the Amended Complaint alleges "unauthorized access to stored communications that they have also pleaded were surrendered to Anderson." DE #22 at 20. The statute, however, expressly provides for access exceeding some limited authorization, as Defendants ultimately acknowledge. *See* DE #28 at 8–9. They thus counter that Anderson (individually and/or via his companies) could not have *intentionally* exceeded any access authority, as Clay's total surrender of the business—including its email accounts—gave the impression of total authority to access the electronic communications. Perhaps so, at some point. Perhaps not, later. But, at this stage, the Court must accept Plaintiffs' allegations and draw reasonable inferences in their favor, as the nonmovants. As noted, the Amended Complaint portrays a scenario in which: (1) Clay surrendered Truck & Auto to Anderson to operate *solely* attendant to an in-progress or planned purchase transaction; (2) Anderson deceitfully accepted the business on those terms, knowing clearly that Clay expected compensation for the business, though Anderson never intended to complete the transaction; and (3) Anderson continued operating and controlling the business—to include accessing its stored electronic communications—despite harboring intents wholly inconsistent with Clay's understanding underlying the business's transfer. Such a theory, if true, at least plausibly demonstrates Anderson's intentional access to Truck & Auto's email accounts outside of the limited authorization Clay intended. Defendants may rightly explore and challenge the

factual legitimacy of this theory through discovery. But, for now, the SCA claim clears the low pleading bar and survives dismissal at this stage.

### 7. **Theft of Trade Secrets (Count Seven)**

Plaintiffs allege trade secret misappropriation under 18 U.S.C. §§ 1832 and 1836 ("the Act").[17] The Amended Complaint avers that Defendants intentionally redirected sensitive Truck & Auto customer and financial data, among other things, from the business and used it instead to further Anderson's other companies, to Truck & Auto's detriment, without Clay's or the entity's consent. Plaintiffs allege that the subject materials constitute protected trade secrets under the Act because Plaintiffs took reasonable measures to protect them from public disclosure, and because the information derives economic value from its non-public status. *See* 18 U.S.C. § 1839(3) (defining trade secret). Defendants, however, contend that the information lost any trade secret protection when Plaintiffs transferred it to Anderson without any nondisclosure directive or other efforts to maintain general secrecy. *See, e.g.*, *BDT Prod., Inc. v. Lexmark Int'l, Inc.*, 274 F. Supp. 2d 880, 892 (E.D. Ky. 2003), *aff'd*, 124 F. App'x 329 (6th Cir. 2005) (quoting *Sheets v. Yamaha Motors Corp.*, 849 F.2d 179, 183–84 (5th Cir. 1988)) (observing that "[a] disclosure of a trade secret to others who have no obligation of confidentiality extinguishes the property right of the trade secret" and noting that "[n]umerous [ ] courts" have followed this general rule).

Plaintiffs fail to allege facts demonstrating *any* efforts to maintain secrecy or privacy of their trade information post-transfer to Anderson. Although they argue that Anderson had an implied obligation not to "misappropriate" the information for his other companies' benefits (at

---

[17] The latter section authorizes private civil rights of action in certain circumstances: "An owner of a trade secret that is misappropriated may bring a civil action under this subsection if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1).

least, absent completion of the sale of Truck & Auto), no facts plausibly give rise to the requisite limitation for this count. Plaintiffs do not allege that they informed Anderson at any time that he could not transfer use of certain information to his other businesses, whether as part of an in-progress sale or otherwise. Nor does the Amended Complaint note any circumstances that would create such an implied obligation. Plaintiffs simply allege no facts showing they made any attempt to circumscribe Anderson's use of the allegedly protected information. To the contrary, Plaintiffs have pleaded that they knew Anderson intended to merge Truck & Auto with his "Big Ass" brand; indeed, Anderson had already begun moving various operations of his other companies into the Truck & Auto space prior to Clay's surrender of the business as a going concern.

Taken as a whole, the Amended Complaint does not plausibly allege that Anderson or his companies had any obligation (whether implied or express) not to use, or to use only to some limited extent, specific confidential information that Truck & Auto possessed. There are no facts suggesting that Clay took any relevant steps whatsoever to protect the allegedly secret trade information, much less a plausible showing that Plaintiffs took "reasonable measures to keep such information secret[.]" 18 U.S.C. § 1839(3)(A). Without any facts demonstrating threshold entitlement to trade secret protection, Plaintiffs cannot state a misappropriation claim. Accordingly, the Amended Complaint's cause of action under the Act must fail.

### 8. Trademark Infringement and Unfair Competition (Counts Eight through Ten)

Plaintiffs assert related and overlapping claims for trademark infringement and unfair competition under the Lanham Act (*see* 18 U.S.C §§ 1114, 1125) and unfair competition under Kentucky's common law. "A 'federal trademark infringement analysis is identical to Kentucky's common law unfair competition analysis.'" *Int'l Bhd. of Teamsters Local 651 v. Philbeck*, No. 5:19-CV-105-DCR, 2020 WL 2950350, at *9 (E.D. Ky. June 3, 2020) (quoting *EAT BBQ LLC v.*

27

*Walters*, 47 F. Supp. 3d 521, 527 (E.D. Ky. 2014)). The Amended Complaint alleges that Defendants continued to display the Mark (*i.e.*, TRUCK ADDONS, the '401 registration) both on the physical storefront and as part of the truckaddons.com online sales platform, despite removal of other Truck & Auto branding material. Plaintiffs maintain that such continued use is infringing and unfairly competes with Plaintiffs' use, harming Truck & Auto's business efforts and improperly benefiting Anderson and his separate companies. Per Plaintiffs, Defendants voluntarily removed the Mark from their website in May 2019. *See* DE #14 ¶ 154.

"A party proves trademark infringement by showing (1) that it owns a trademark, (2) that the infringer used the mark in commerce without authorization, and (3) that the use of the alleged infringing trademark 'is likely to cause confusion among consumers regarding the origin of the goods offered by the parties.'" *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 502 (6th Cir. 2013) (quoting *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 515 (6th Cir. 2007) (citation omitted)). Defendants substantively challenge only the second issue; they argue that Clay's transfer of the business as a going concern authorized Anderson and his companies to use the Mark, at least to the extent such use was necessary to continue operating Truck & Auto.[18] Plaintiffs' entire factual theory, though, as discussed in detail many times in this ruling, is that Anderson feigned interest in purchasing Truck & Auto as Clay proposed, gained control of the

---

[18] In addition to a general authorization argument, Defendants contend in their reply that they "had at least an implied license as a matter of law" to use the Mark. DE #28 at 13. They further note, however, that "[a]n implied license . . . 'arises out of the objective conduct of the parties, which a reasonable man would regard as indicating that an agreement has been reached.'" *Id.* at 12 (quoting *Birthright v. Birthright, Inc.*, 827 F. Supp. 1114, 1134 (D.N.J 1993) (citation omitted)). Somewhat interestingly, such an argument contrasts with Defendants' salient position that no agreement (subjective or objective) was reached between the parties as to Truck & Auto's transfer. In any event, though, Plaintiffs allege infringing use of the Mark until at least May 2019. By that point, per the facts in the Amended Complaint, any agreement between the parties had plainly dissolved, in an objective sense.

business (including Mark use) under such pretenses, and gradually disassembled the Truck & Auto business operations for the benefit of Anderson's other companies, without compensating Clay.

The Amended Complaint fairly alleges that Clay's surrender of Truck & Auto to Anderson was strictly in reliance upon Anderson's contemplated purchase of the business, and Anderson's authority to control and operate the business was defined by the in-progress transaction. Per Plaintiffs, Anderson's authorization to use the Mark thus extended only insofar as it was attendant to that purchase. Any extraneous use was, therefore, necessarily unauthorized, in Plaintiffs' view. And because Plaintiffs clearly aver that the purported purchase was a sham, the Amended Complaint's facts plausibly suggest, at this juncture, some degree of unauthorized Mark use. Accordingly, these causes of action withstand Defendants' sole substantive challenge at the dismissal stage.[19]

## IV.    Conclusion

For the reasons discussed, and per the foregoing analysis, the Court **GRANTS in part** and **DENIES in part** the DE #22 dismissal motion. The Court **DISMISSES** Plaintiffs' fiduciary duty (Count Two) and trade secrets (Count Seven) claims. The remaining causes of action persist, on the terms here stated, and must proceed to discovery.

Pursuant to DE #15, the Court **REFERS** the case to Judge Stinnett for schedule development and exploration of possible mediation.

This the 1st day of July, 2020.



**Signed By:**

*__Robert E. Wier__*

**United States District Judge**

---

[19] Defendants briefly argue that Plaintiffs abandoned use of the Mark. The alleged facts show otherwise, and the Court must accept them in resolving the instant motion. Defendants pursue only the authorization/implied license theory in their reply.